

05-CR-00142-INFO

FILED
LODGED
ENTERED
RECEIVED

APR 12 2005

CLERK U.S. DISTRICT COURT
AT SEATTLE
BY WESTERN DISTRICT OF WASHINGTON
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

     Plaintiff,

  v.

CHRISTINE J. HENDRICKSON,

     Defendant.

No. **CR05 0142 C**

**INFORMATION**

(Felony)

THE UNITED STATES ATTORNEY CHARGES THAT:

## COUNT 1

### (Conspiracy to Commit Mail Fraud)

  1. From a date uncertain, but no later than in or about September 1999, and continuing until in or about January 2003, within the Western District of Washington and elsewhere, the defendant, CHRISTINE J. HENDRICKSON, together with other persons known and unknown, did unlawfully, willfully and knowingly combine, conspire, confederate and agree among themselves and with each other to commit certain offenses against the United States, as follows:

//

//

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

**A.**     **Introduction.**

At all times relevant to this Information:

2.     Microsoft Corporation (Microsoft), located in Redmond, Washington, was engaged in manufacturing computer software.

3.     ClientLogic, located in Buffalo, New York, provided warehousing services to Microsoft, and stored Microsoft software after manufacturing and prior to sale.

4.     Microsoft Internal Product Ordering Service ("IPO"), also known as MS Market, was an on-line ordering feature that allowed Microsoft employees to order Microsoft software for business purposes at no cost to themselves.  Microsoft employees who wished to order such software submitted an order electronically, via the Internet, specifying the desired type and number of Microsoft software products.  This order was received by ClientLogic.

5.     Upon receiving orders for computer software through the IPO program, ClientLogic used various commercial interstate carriers, including Airborne Express and United Parcel Service, to deliver the software from its warehouse located in Grove City, Ohio, to the address identified on the orders.

6.     Microsoft guidelines specifically advised Microsoft employees that use of MS Market was restricted for Microsoft "business purposes."  The MS Market and Internal Product Ordering (IPO) Program Guidelines specifically stated, in relevant part:

> What is **not** available through the IPO Program?  The IPO Program has set criteria, which Products must meet in order to be offered internally.   Products offered through the IPO Program are for *business-use only.*

Microsoft's "General Company Guidelines" also stated in relevant part:

> Any violation of the following guidelines or other misconduct may result in disciplinary action, up to and including immediate termination of employment.
>
> * * *
>
> Abuse of any Microsoft privilege, such as...internal orders...This

Information/Hendrickson, et al - 2

includes any activity, legal or illegal, using your Microsoft position or Microsoft property, equipment or services for personal use or gain.
Removal or use of company property (except for company business), or property of other persons, without written permission.

7.     Although Microsoft software products offered through MS Market's IPO program were available at no cost to the employee, the products have high retail value in the secondary market.  The retail value of the software was based on the "estimated retail price" set by Microsoft, which owns the intellectual property and distribution rights to the software.  The retail prices for the software were published on Microsoft's various web sites and other publications.

8.     When submitting an order through MS Market's IPO program, the employee was required to notify his or her supervisor or manager of the order via the program.  Prior to March 13, 2002, individuals with access to MS Market could manipulate the program to prevent an email alert to the employee's supervisor or manager regarding the employee's ordering activities.

9.     From on or about March 13, 2000, until her termination on or about June 12, 2002, CHRISTINE J. HENDRICKSON was employed by Microsoft as a Group Assistant.  During her employment with Microsoft, she was informed of Microsoft guidelines concerning the proper use of MS Market and the IPO Program.  During her employment with Microsoft, HENDRICKSON had access to MS Market and the IPO Program.

**B.     Object of the Conspiracy.**

10.     The object of the conspiracy was to devise a scheme and artifice to defraud, to deprive Microsoft of the intangible right of honest services, and to obtain money and property by means of false and fraudulent pretenses, representations and promises; and to execute or attempt to execute such scheme or artifice, knowingly and willfully sending and delivering and causing to be sent and delivered by private and commercial interstate

Information/Hendrickson, et al - 3

1  carrier, according to the directions thereon, Microsoft software products, all in violation
2  of Title 18, United States Code, Sections 1341 and 1346.

3  **C.    Manner and Means of the Conspiracy and Scheme to Defraud.**

4      11.    It was part of the scheme and artifice that HENDRICKSON used MS Market
5  and the IPO Program to electronically transmit in interstate commerce, via the Internet,
6  orders for Microsoft software products to ClientLogic located in Buffalo, New York.

7      12.    It was a further part of the scheme and artifice that HENDRICKSON, in
8  ordering Microsoft software, did not intend to apply it to any Microsoft "business-use;"
9  rather, she intended to sell it to others or otherwise dispose of it for personal profit.

10     13.    It was a further part of the scheme and artifice that although
11 HENDRICKSON knew that Microsoft employees were prohibited from using MS Market
12 to order computer software for personal use, she did not reveal to Microsoft that she, in
13 fact, was ordering Microsoft software for personal use, that is, to sell it for personal profit.

14     14.    It was a further part of the scheme and artifice that HENDRICKSON used
15 MS Market and the IPO Program to place orders for Microsoft software products on behalf
16 of another former Microsoft employee, Finn W. Contini, in return for a percentage of the
17 proceeds from the sale of the software products.

18     15.    It was a further part of the scheme and artifice that HENDRICKSON used
19 MS Market to fraudulently order from Client Logic approximately 1480 pieces of
20 Microsoft software products with a total wholesale value of approximately $7.4 million.

21 **D.    Overt Acts.**

22     16.    In furtherance of the conspiracy and to promote the objects thereof,
23 HENDRICKSON committed the following overt act:  On or about January 30, 2002,
24 within the Western District of Washington and elsewhere, HENDRICKSON, having
25 devised, and aided and abetted in devising the above-described scheme and artifice to
26 defraud, did, for the purpose of executing such scheme and artifice, knowingly and

27

28 Information/Hendrickson, et al - 4

1  willfully cause to be sent and delivered by private and commercial interstate carrier

2  according to the directions thereon 36 pieces of Microsoft software, specifically, Windows

3  Server 2000 with 10 Client Licenses, from Client Logic located in the state of Ohio to "N.

4  Candy" at an address in Redmond, Washington, constituting a representative sample of the

5  use of the mails and private and commercial interstate carriers in furtherance of the scheme

6  and artifice to defraud.

7       All in violation of Title 18, United States Code, Section 371.

8

9     DATED this ___12th___ day of ___April___, 2005.

10

11

12                JOHN MCKAY

13                United States Attorney

14

15

16                FLOYD G. SHORT

17                Assistant United States Attorney

18

19

20                KATHERYN KIM FRIERSON

21                Assistant United States Attorney

22

23

24

25

26

27

28  Information/Hendrickson, et al - 5